```
UNITED STATES DISTRICT COURT                                              C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SOUDABEH TEHRANI,                                           :
                                                            :
                              Plaintiff,                    :
                                                            :   **MEMORANDUM**
                   - against -                              :   **DECISION AND ORDER**
                                                            :
THE TOWN OF OYSTER BAY HOUSING                              :   18-cv-2450 (BMC) (LB)
AUTHORITY, *et al.*,                                        :
                                                            :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff *pro se* brought this action against a number of people and agencies for various perceived wrongs. In her second amended complaint, there are claims against at least five different sets of wrongdoers that she has lumped together: (1) a claim against the Town of Oyster Bay Housing Authority (the "Housing Authority") and its employees, Elisa Genaro, Ann Ayeles, James Picken, Rupoli Paranandi, Mark Prosaco, and Ethel Wright (collectively, the "Housing Authority employees"), for discriminating against her, based on her Iranian national origin, in providing her with and maintaining housing, and forging documents to facilitate that discrimination; (2) a claim against her social workers, Hofsa Mohsen and "Mrs. Pearson," for giving her bad social work advice concerning her apartment; (3) a claim against her neighbor, Nicholas Frangiliui, and her insurance agent or adjuster, Garnet Parnell, for damage to her car or improper handling of her insurance claim; (4) a claim against the Nassau County Police for giving her a ticket in connection with the incident involving her car; and (5) a claim against the

U.S. Department of Housing and Urban Development and the New York State Division of Human Rights for wrongs which I cannot discern.

The Court has evaluated the collage of claims in the second amended complaint under 28 U.S.C. § 1915 and for the reasons discussed below, they are dismissed with leave to amend only as against the Housing Authority and its employees for housing discrimination and fraud. That ruling, in turn, disposes of the following motions that plaintiff has made: (1) her motion for leave to file her second amended complaint is granted but the second amended complaint is dismissed pursuant to 28 U.S.C. § 1915 with leave to file a third amended complaint; and (2) her motion to seal this case is denied as unnecessary because it is already sealed, but she is Ordered to Show Cause within 14 days why it should not be unsealed.

## SUMMARY OF SECOND AMENDED COMPLAINT

Although plaintiff applied for single unit housing with the Housing Authority, she instead signed a lease for a family housing unit because, according to defendant Elisa Genaro, single housing was unavailable. Apparently, plaintiff ended up sharing an apartment with a roommate who plaintiff describes as an alcoholic.

Plaintiff blames defendant Hofsa Mohsen, who appears to be a social worker, for convincing plaintiff to share the apartment with an alcoholic. Plaintiff also blames defendant Mrs. Pearson, who appears to be another social worker, for causing plaintiff to not want her daughter to live in public housing. Plaintiff does not provide Mrs. Pearson's first name or explain what Mrs. Pearson did to make plaintiff not want her daughter living in public housing.

Plaintiff also has a litany of complaints against the Housing Authority: it took too long to turn off a smoke detector after plaintiff set it off by burning toast; it caused her daughter's depression, because plaintiff's daughter disliked plaintiff's apartment; it did not provide plaintiff

with a free Thanksgiving turkey; it failed to adequately cut plaintiff's lawn; it failed to repair plaintiff's apartment; it provided a community area that plaintiff did not find enjoyable to use; and it did not provide sufficient parking spaces.

The lack of adequate parking allegedly led plaintiff to park her car in front of the residence of her neighbor, Frangiliui, who then was involved in a car accident with plaintiff. As a result of the accident, police arrived at plaintiff's residence, asked plaintiff for her driver's license and proof of insurance, and gave plaintiff a ticket. Defendant Garret Parnell, an insurance representative, handled plaintiff's insurance claim, and plaintiff expresses dissatisfaction with Parnell's work.

Plaintiff also alleges that the Housing Authority employees committed various wrongs against her. Ayeles and Picken manipulated her into signing a form related to the Internal Revenue Service. Paranandi obtained plaintiff's signature on an unidentified document under unidentified false pretenses. Prosasco caused plaintiff to not pay her rent and other bills on time. Plaintiff sought to complain about Prosasco and spoke to Wright, who provided plaintiff with an email address. Plaintiff submitted a complaint to the email address and discovered that the email address belonged to Prosasco.

Plaintiff's complaint led to Prosasco harassing plaintiff by, among other things, making an obscene gesture to plaintiff; controlling plaintiff's television using an application on his phone; removing a safety latch from plaintiff's residence; directing plaintiff to remove her car from a handicap spot; and passing unidentified "potentially damaging" information to Picken, who passed the information to the Social Security Administration.

Plaintiff filed multiple administrative and judicial complaints regarding these allegations, including complaints in the Supreme Court of New York, with defendant United States

Department of Housing and Urban Development ("HUD"), and with defendant New York State Division of Human Rights ("NSYDHR").

Plaintiff also claims that defendant Kristen Garvey, who is not otherwise identified, called her an "Iranian terrorist," that plaintiff was the subject of discrimination as an Iranian, and that she was the subject of retaliation as a result of her complaints.

Finally, plaintiff also purports to bring claims against all defendants for obtaining plaintiff's signature on some unidentified form under false pretenses.

## DISCUSSION

I. **Section 1915**

  A. **Standard of Review**

Under the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it is "based on an indisputably meritless legal theory" – that is, when it "lacks an arguable basis in law ... or [when] a dispositive defense clearly exists on the face of the complaint." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).

A "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," a court should grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

4

### 1. Frivolousness

Despite three attempts to properly plead a conspiracy theory, nothing in the second amended complaint can support any conclusion other than it is baseless. Although plaintiff very likely believes that she is the victim of a vast conspiracy involving all of the defendants, that claim is utterly implausible, which is no doubt why there are no facts pleaded which could support it. There is no way that the Housing Authority employees got together with her neighbor, her insurance adjuster, her social workers, HUD and NYSDHR, and the police to make her life difficult. That is a figment of plaintiff's imagination. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25 (1992).

Drawing every inference in plaintiff's favor, the most she has is separate statutory or common law tort claims against each of these defendants or group of defendants. See e.g. Raoul v. City of N.Y. Police Dep't, No. 14-CV-1787, 2015 WL 1014204, at *2 (E.D.N.Y. Mar. 6, 2015) (dismissing complaint where plaintiff's claims were "based purely on wide-ranging, incoherent allegations of a massive conspiracy by numerous federal, state, and local government entities to persecute him ....").

### 2. Subject Matter Jurisdiction

Once plaintiff's claims are properly separated, most of them fail for lack of subject matter jurisdiction. Bad advice from social workers is not a federal claim. Nor is damaging plaintiff's car and improperly adjusting her insurance claim. The Court has considered whether to exercise supplemental jurisdiction over these claims but they are so far attenuated from the main issue –

her housing situation – that the exercise of supplemental jurisdiction would be inappropriate. See 28 U.S.C. § 1367.

The only even remotely viable claims that plaintiff has are against the Housing Authority and its employees in connection with her housing situation.[1] Her proposed second amended complaint fails to state those claims, but she will be given one more chance.

### 3. Failure to State a Claim Against the Housing Authority and its Employees

Plaintiff's second amended complaint is 77 pages long. Reading it beyond liberally, and eliminating those claims that the Court has found frivolous or over which it lacks subject matter jurisdiction, plaintiff is attempting to assert claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and for common law fraud against the Housing Authority and its employees. Any other statutes or torts she cites for claims against other parties cannot give rise to a claim on her behalf.

Under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The FHA "reaches conduct that … would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling after acquisition" of dwellings, including "failing or delaying maintenance or repairs of sale or rental dwellings because of" national origin. Francis v. Kings Park Manor, Inc., 917 F.3d 109, 119 (2d Cir. 2019).

---

[1] The Nassau County Police 2nd Precinct is not a suable entity, and even if had a claim against individual police officers for wrongful ticket writing, she has not named any.

Plaintiff claims that the Housing Authority and its employees discriminated against her in her enjoyment of her apartment, or the provision of services associated with her apartment, because she is of Iranian origin. Although plaintiff has identified an alleged failure to provide her with services, including repairing her apartment, she has not alleged facts showing that this failure occurred because she is of Iranian origin. She can't simply assert that her national origin is Iranian and therefore she has been the victim of discrimination. She must allege facts that tend to tie her Iranian national origin to defendants' actions to state a claim under the FHA.

The FHA also prohibits retaliation for protected activities, i.e. "action taken to protest or oppose statutorily prohibited discrimination." Elmowitz v. Executive Towers at Lido, LLC, 571 F. Supp. 2d 370, 376 (E.D.N.Y. 2008). "To establish a prima facie case of retaliation under … the FHA, Plaintiff must allege that (1) he was engaged in a protected activity, (2) Defendants were aware of this activity, (3) Defendants took adverse action against Plaintiff, and (4) a causal connection exists between the protected activity and the adverse action." Id.

Plaintiff has alleged that she filed complaints with the Supreme Court of New York, HUD, and NSYDHR[2], but has not alleged facts showing that defendants were aware of her complaints or that there was any causal connection between the complaints and any adverse action against plaintiff. These allegations are not sufficient to bring a claim under the FHA.

"The elements of fraud in New York include: a false representation of material fact, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." Evans v. Ottimo, 469 F.3d 278, 283 (2d Cir. 2006). Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must

---

[2] For the sake of good order, the Court hereby holds any claims against HUD and NYSDHR are dismissed as baseless. So is the claim against Kristen Garvey, because it although it is not nice for someone to make an ethnic slur, it is not illegal except in particular circumstances, no hint of which is given here.

state with particularity the circumstances constituting fraud or mistake." "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted). "[C]ourts generally permit plaintiffs, especially those appearing *pro se*, to replead a fraud claim when the dismissal is based on the failure to meet the particularity requirements of Fed.R.Civ.P. 9(b) … ." Gourdine v. Cabrini Medical Center, 128 F. App'x 780, 781 (2d Cir. 2005).

Plaintiff has alleged that these defendants have committed fraud, but her allegations fall well short of Rule 9(b)'s requirement that she plead fraud with particularity. Although plaintiff has alleged that defendants caused her to sign documents under false pretenses, plaintiff has not identified the allegedly fraudulent statements that induced her to sign these documents, who made these statements, when and where the speaker made these statements, or why these statements are fraudulent. Plaintiff's fraud claims are dismissed.

### B. Leave to Amend

In light of plaintiff's *pro se* status and the fact that she has not been instructed until now as to the deficiencies in her pleadings, the Court will allow her to file a third amended complaint within 14 days of the entry of this order. The third amended complaint will completely replace the original, first amended, and second amended complaint. It must set forth a short and plain statement of the facts as if there had been no prior complaint.

With respect to plaintiff's FHA discrimination claim, plaintiff must allege facts showing that these defendants discriminated against her in the terms, conditions, or privileges of her lease of her apartment, or in the provision of services of facilities in connection with her apartment,

because of plaintiff's national origin. As noted above, merely alleging that defendants have not repaired her apartment and that she is of Iranian national origin is insufficient under the FHA.

With respect to plaintiff's FHA retaliation claim, it is not enough to simply allege that plaintiff has complained about discrimination. Her third amended complaint must allege facts tending to show that defendants were aware of the complaints and that these complaints caused defendants to take adverse action against her.

With respect to plaintiff's fraud claim, the third amended complaint must allege facts specifying the statements that the plaintiff contends were fraudulent, identifying the speaker, stating where and when the statements were made, and explaining why the statements were fraudulent.

The third amended complaint may only include claims under the FHA against the Housing Authority and its employees. These defendants were the only defendants who – as plaintiff's landlord or employees of plaintiff's landlord – were in a position to have discriminated, retaliated, or committed fraud in connection with that discrimination and retaliation against plaintiff.

The 77-page second amended complaint that plaintiff has filed, which has subtitles but no paragraph numbers, is unacceptable. She has to stick to the facts – who did what and when did they do it. If it takes 77 pages again or more to do that, it is very likely that the Court will dismiss the case. Furthermore, Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim" and "each allegation must be simple, concise, and direct." Federal Rule of Civil Procedure 10(b) also requires that a "party must state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Again, if plaintiff is unable to do this, she is unable to proceed in this Court.

If her third amended complaint fails to comply with these requirements, the Court will dismiss it and probably not give plaintiff additional leave to file a fourth amended complaint.

**II.     Sealing**

The First Amendment "protects the public's right to have access to judicial documents." United States v. Erie Cty., 763 F.3d 235, 239 (2d Cir. 2014).[3] When determining whether a document is a judicial document, the Court assesses the document's relevance to the performance of the judicial function and use in the judicial process. Id. at 240. The First Amendment applies when "'experience and logic' support making the document available to the public." Id. (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)). Accordingly, the Court must "consider (a) whether the documents have historically been open to the press and general public (experience) and (b) whether public access plays a significant positive role in the functioning of the particular process in question (logic)." Id. (internal quotation marks and citation omitted).

"Once a First Amendment right of access to judicial documents is found, the documents may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id (internal quotations and alterations omitted). These "higher values" include avoiding endangering people or violating their privacy. See United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995).

---

[3] Even though there is also a common law right of access to judicial documents, "the First Amendment protection has been understood to be stronger than its common law ancestor and counterpart." Id. Here, the Court "need not, and do[es] not, engage in such a common law analysis" separate from the First Amendment analysis. Id. Because the Court finds that the public has a First Amendment right of access to the judicial documents at issue, no determination as to the public's common law right of access would the change the result.

Here, plaintiff has filed a motion to compel the Court to inform her whether the case is under seal, and if the case is not under seal, to seal the case.[4] This is motion is denied as unnecessary. The docket is currently accessible only to the parties and is otherwise sealed.

However, plaintiff has not provided an adequate basis for the Court to make findings that would justify sealing any document in this case, let alone the entire case. The docket includes complaints, answers, court orders, and other documents that play a critical role in the judicial process. The public has historically been able to access these documents and public access plays a significant role in monitoring the Court's adjudication of the claims addressed in these judicial documents. Therefore, these documents are judicial documents, and the public has a qualified right to access them.

Having found a qualified right to access these documents, the Court may only seal these documents if the Court makes specific findings demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve those values. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (Judicial documents are entitled to a presumption of access, which may be rebutted with "specific, on the record findings ... that closure is essential to preserve higher values and is narrowly tailored to serve that interest.")

Plaintiff has requested that this case be sealed based on a general reference to "domestic violence with [plaintiff's] husband." However, the Court cannot determine what, if any, relationship any of the judicial documents in this case have to plaintiff's husband. Further,

---

[4] In the motion to compel, plaintiff also requests that the Court mail a copy of Court documents to a PO box. As noted below, the Court grants this request.

11

plaintiff has previously filed lawsuits in federal and state court[5] in which publicly-available documents containing substantially similar information are already public.

Accordingly, plaintiff is ordered to show cause within 14 days why this entire docket should not be unsealed. She should specifically explain why unsealing this docket would threaten her privacy or safety, if that is the basis for sealing this docket, in light of the fact that similar information is also publicly available in other proceedings. If plaintiff does not adequately respond to this order show cause within 14 days of the entry of this order, then this docket will be unsealed in its entirety.

## **CONCLUSION**

For the reasons stated above, plaintiff's [26] motion for leave to file her second amended complaint is granted, and plaintiff's [29] motion to compel sealing is denied as unnecessary. The second amended complaint is dismissed with leave to file a third amended complaint consistent with this order no later than 14 days from the date it is docketed. Plaintiff is ORDERED TO SHOW CAUSE within 14 days of the entry of this Order why this docket should not be unsealed in its entirety.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order

---

[5] Tehrani v. Town of Oyster Bay Hous. Auth., 17-cv-02780 (E.D.N.Y.); Tehrani v. Town of Oyster Bay, No. 482/2018 (N.Y. Sup. Ct. Nassau Cty.).

would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
April 9, 2019